IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 26-cv-00461-PAB

SOKHIBDZHON RAFIBAEV,

    Petitioner,

v.

KRISTI NOEM, in her official capacity as Secretary of Homeland Security,
TODD LYONS, in his official capacity as Acting Direct, U.S. Immigration and Customs Enforcement,
ROBERT GUADIAN, in his official capacity as Field Office Director of Enforcement and Removal Operations, Denver Field Office, Immigration and Customs Enforcement, and
JUAN BALTASAR,[1] in his official capacity as Warden of Denver Contract Detention Facility,

    Respondents.

---

**ORDER**

---

This matter comes before the Court on petitioner Sokhibdzhon Rafibaev's Amended Petition for Writ of Habeas Corpus [Docket No. 8]. Respondents filed a response, Docket No. 9, and petitioner filed a reply. Docket No. 11.

---

[1] The proper spelling of this respondent's name appears to be Baltazar. *See, e.g., De La Cruz v. Baltazar*, No. 26-cv-00360-PAB, 2026 WL 439217 (D. Colo. Feb. 16, 2026); *Gonzalez v. Baltazar*, No. 26-cv-00297-PAB, 2026 WL 415600 (D. Colo. Feb. 13, 2026); *Portillo Martinez v. Baltazar*, No. 26-cv-00106-PAB, 2026 WL 194163 (D. Colo. Jan. 26, 2026); *Florez Marin v. Baltazar*, No. 25-cv-03697-PAB, 2025 WL 3677019 (D. Colo. Dec. 18, 2025).

I. **BACKGROUND**[2]

Petitioner is a native and citizen of either Russia or Tajikistan.[3]  Docket No. 9-1 at 2, ¶ 4.  On December 6, 2023, petitioner entered the United States through the Progreso (Texas) Port of Entry.  *Id.*, ¶ 5; Docket No. 8 at 6, ¶ 21.  Petitioner did not have any document authorizing his admission into the United States and U.S. Customs and Border Protection ("CBP") determined that petitioner was inadmissible.  Docket No. 9-1 at 2, ¶ 5.  Pursuant to 8 U.S.C. § 1182(d)(5), CBP paroled petitioner into the United States until December 4, 2024.  Docket No. 9-1 at 2, ¶ 5.  On December 6, 2023, CBP issued a Notice to Appear ("NTA"), initiating removal proceedings under 8 U.S.C. § 1229a.  *Id.* at 2-3, ¶ 6.  The NTA charged petitioner with being inadmissible to the United States pursuant to 8 U.S.C. § 1182(a)(7)(A)(i)(I).  *Id.*  On June 28, 2024, petitioner filed a Form I-589, Application for Asylum and for Withholding of Removal with U.S. Citizenship and Immigration Services ("USCIS").  *Id.* at 3, ¶ 7.  On September 18, 2024, the Executive Office of Immigration Review ("EOIR") entered a "failure to prosecute" completion code into the court's system.  *Id.*, ¶ 9.

On November 13, 2025, a Wyoming State Highway Patrol Officer encountered petitioner at or near Rock Springs, Wyoming in connection with a commercial vehicle inspection.  *Id.*, ¶ 10.  Upon consultation with local Immigration and Customs Enforcement ("ICE") officials, the officer determined that petitioner's parole had expired and he did not possess documentation authorizing his lawful presence in the United

---

[2] The following facts are undisputed unless otherwise stated.
[3] Petitioner claims that he is a "40-year-old citizen of Russia."  Docket No. 8 at 6, ¶ 21.  Conversely, respondent, through the declaration of a Deportation Officer, claims that petitioner is a native and citizen of Tajikistan.  Docket No. 9-1 at 2, ¶ 4.  This discrepancy is irrelevant to the disposition of this case.  Therefore, the Court will not resolve it.

States.  *Id.*, ¶ 11.  ICE issued a Form I-200 arrest warrant and subsequently arrested and detained petitioner.[4]  *Id.*

The Department of Homeland Security ("DHS") became aware that EOIR had issued a failure to prosecute code regarding the initial NTA.  *Id.* at 3-4, ¶ 13.  On November 20, 2025, DHS issued a new NTA, charging petitioner with inadmissibility pursuant to 8 U.S.C. § 1182(a)(6)(A)(i).  *Id.*  On November 21, 2025, DHS filed a Form I-261, Additional Charges of Inadmissibility/Deportability, charging petitioner with inadmissibility pursuant to 8 U.S.C. § 1182(a)(6)(A)(i)(I) and § 1182(a)(7)(A)(i)(I).  *Id.* at 4, ¶ 14.  On January 26, 2026, DHS filed another Form I-261, charging petitioner as inadmissible solely under 8 U.S.C. § 1182(a)(7)(A)(i)(I).  *Id.*, ¶ 16.  The Form I-261 also classified petitioner as an "arriving alien."  *Id.*  On February 10, 2026, petitioner appeared before the immigration judge and conceded removability as charged in the Form I-261.  *Id.*, ¶ 17.  Petitioner's removal proceedings remain pending before the immigration court.  *Id.*, ¶ 18.  Petitioner is scheduled for an individual hearing on the merits of his application on May 4, 2026.  *Id.*  Petitioner is detained at the Denver Contract Detention Facility pending resolution of removal proceedings.  *Id.*, ¶ 19.

On February 6, 2026, petitioner filed a Petitioner for Writ of Habeas Corpus, which petitioner amended on February 16, 2026.  Docket Nos. 1, 8.  Petitioner brings claims for (1) Violation of 8 U.S.C. § 1225(b)(2); (2) Violation of 8 U.S.C. § 1226(a); and (3) Violation of Due Process.  Docket No. 8 at 14-16, ¶¶ 55-70.

---

[4] In his petition, petitioner notes that "[n]either petitioner nor counsel have been able to verify whether Respondents issued a Warrant of Arrest (Form I-200) at the time of the arrest by Respondents."  Docket No. 8 at 12, ¶ 47.  Respondents state that ICE issued the arrest warrant, which petitioner does not dispute in his reply.  Docket No. 9-1 at 3, ¶ 11; Docket No. 11 at 2.

## II. ANALYSIS

In his petition, petitioner states that the government is detaining him pursuant to 8 U.S.C. § 1225(b)(2)(A). Docket No. 8 at 8-10, ¶¶ 34, 39. Petitioner argues that this is improper, because his detention is governed by 8 U.S.C. § 1226(a). *Id.* at 9, ¶¶ 37-38. Respondents, however, explain that they are detaining petitioner pursuant to 8 U.S.C. § 1225(b)(1), not § 1225(b)(2). Docket No. 9 at 6. Respondents argue that, upon entry to the United States, petitioner was detained pursuant to § 1225(b)(1).[5] *Id.* at 6-7. Respondents argue that "Petitioner's discretionary parole into the United States under 8 U.S.C. § 1182(d)(5)(A) did not change his status as an applicant for admission subject to mandatory detention under § 1225(b)(1)(B)(ii)." *Id.* at 7.

"Section 1225(b)(1) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101 *et seq.,* as amended by the Illegal Immigration Reform and Responsibility Act of 1996 ("IIRIRA"), governs procedures for the inspection of aliens arriving in the United States who have not been admitted or paroled." *M.S.P.C. v. U.S. Customs & Border Prot.*, 60 F. Supp. 3d 1156, 1161 (D. N.M. 2014) (citing 8 U.S.C. § 1225(b)(1)). "Aliens who have not been admitted or paroled into the United States and who have not satisfactorily demonstrated to an immigration officer that the alien has been physically present in the United States continuously for the prior two years are subject to expedited removal without further hearing or review, unless the alien indicates an

---

[5] Respondents argue that, at the time CBP encountered petitioner, he "fell into the second subcategory of citizens subject to § 1225(b)(1)(A)(iii)." Docket No. 9 at 6. However, respondents also state that, when petitioner was released on parole, he was "subject to mandatory detention under § 1225(b)(1)(B)(ii)." *Id.* at 7. Thus, it is not clear whether respondents are alleging petitioner was initially detained under § 1225(b)(1)(A)(iii) or § 1225(b)(1)(B)(ii). The Court need not determine the purported authority for petitioner's initial detention because its analysis is unchanged regardless of which subsection of § 1225(b)(1) petitioner was initially detained under.

intention to apply for asylum or a fear of persecution, at which point the immigration officer shall refer the alien for an interview by an asylum officer." *Id.* (citing 8 U.S.C. § 1225(b)(1)(A)(i)-(iii)). Section 1225(b)(1)(B)(ii) requires that, if an asylum officer determines that a noncitizen has a credible fear of persecution, the noncitizen shall be detained for further consideration of the application for asylum. 8 U.S.C. § 1225(b)(1)(B)(ii). However, as explained in more detail below, 8 U.S.C. § 1182(d)(5)(A) allows noncitizens to be paroled "for urgent humanitarian reasons or significant public benefit." 8 U.S.C. § 1182(d)(5)(A). Thus, noncitizens who are detained under § 1225(b)(1)(B)(ii) can be paroled under § 1182(d)(5)(A). Here, where petitioner has been released on parole pursuant to § 1182(d)(5)(A) for nearly two years, it is illogical to suggest that his re-detention is governed by § 1225(b)(1), which, as described above, "governs procedures for the inspection of aliens arriving in the United States who have not been admitted or paroled." *M.S.P.C.*, 60 F. Supp. 3d at 1161 (citing 8 U.S.C. § 1225(b)(1)).

Petitioner argues that "arriving" in the context of 8 U.S.C. § 1225(b) means the "physical act of reaching a destination." Docket No. 8 at 10, ¶ 41 (citing *Qasemi v. Francis*, 2025 WL 3654098, at *6 (S.D.N.Y. Dec. 17, 2025)). Thus, petitioner argues that he cannot be "arriving" in the United States after he was released on parole into the interior of the country. Docket No. 8 at 10, ¶ 41. In *Qasemi*, 2025 WL 3564098, at *5-6, the court analyzed the meaning of "arrive" in the context of § 1225(b)(1). *Id.* Relying on the plain language of the word, the court determined that, "[p]ut simply, someone arriving in the United States is someone who has reached the border or a port of entry." *Id.* at *6. The court further determined that "nothing in Section 1225 suggests that

5

'arriving' is used as a term of art in the clause, 'an alien . . . who is arriving in the United States.'" *Id.* (citation omitted). Thus, the court determined that, "upon his parole into the interior of the country, [petitioner] had arrived in the United States and was no longer a noncitizen arriving in the United States." *Id.* Other courts analyzing § 1225(b)(1) have come to the same conclusion. *See Rodriguez-Acurio v. Almodovar*, 2025 WL 3314420, at *19–20 (E.D.N.Y. Nov. 28, 2025); *Coal. for Humane Immigrant Rts v. Noem*, 805 F. Supp. 3d 48, 93-94 (D.D.C. 2025).

Respondents do not address whether petitioner can be classified as "arriving in the United States" as of the date of his re-detention.[6] Rather, respondents argue that

---

[6] Respondents note that the Supreme Court has stated that "noncitizens 'who arrive at ports of entry—*even those paroled elsewhere in the country for years pending removal*—are 'treated' for due process purposes 'as if stopped at the border.'" Docket No. 9 at 4-5 (quoting *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 139 (2020)). This view could be construed as an argument that petitioner should be treated as "arriving in the United States" even though he was paroled. In *Thuraissigiam*, the Court held that an individual is not entitled to procedural rights other than those afforded by statute when apprehended in the United States, but only 25 yards from the border. *Id.* at 106. Moreover, *Thuraissigiam* involved an individual who was seeking additional administrative review of his asylum claim, not a petitioner challenging his detention. *Id.* at 107. Thus, it is not clear that its holding would be applicable here. In fact, § 1225(b)(1) explicitly treats noncitizens differently if they were paroled. Section 1225(b)(1)(A)(iii)(II) states that § 1225(b)(1) is applicable to a noncitizen "who has not been admitted or paroled into the United States, and who has not affirmatively shown . . . that the alien has been physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility." Therefore, § 1225(b)(1) does not treat noncitizens who were paroled the same as noncitizens who arrive at ports of entry. Moreover, in determining whether petitioner is "arriving in the United States," the Court is not determining the nature and extent of petitioner's due process rights, but rather is interpreting the statute in the context of a habeas corpus petition. Thus, even if *Thuraissigiam* stands for the proposition that all noncitizens who arrive at ports of entry are always treated, for due process purposes, as if stopped at the border, that would not change the Court's analysis. *Cf. Rodriguez-Acurio*, 2025 WL 3314420, at *26-27 (noting that *Thuraissigiam's* reference to "those paroled elsewhere in the country" is dicta and reflects a rule originating in the historical practice of allowing ships containing noncitizens to land in American harbors while immigration authorities determined their admissibility).

§ 1182(d)(5)(A) mandates that petitioner is subjected to the same statutory "status" that he was subjected to when released on parole.  Docket No. 9 at 7.  Section 1182(d)(5)(A) states that:

> The Secretary of Homeland Security may, except as provided in subparagraph (B) or in section 1184(f) of this title, in his discretion parole into the United States temporarily under such conditions as he may prescribe only on a case-by-case basis for urgent humanitarian reasons or significant public benefit any alien applying for admission to the United States, but such parole of such alien shall not be regarded as an admission of the alien and when the purposes of such parole shall, in the opinion of the Secretary of Homeland Security, have been served the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States.

8 U.S.C. § 1182(d)(5)(A).  Thus, respondents argue that "Petitioner's parole into the United States was not any form of 'admission' and, upon termination of the parole, he was back to the same status as he was when he was released on parole: subject to mandatory detention under § 1225(b)(1)(B)(ii)."  Docket No. 9 at 7.

However, § 1182(d)(5)(A) "does *not* state that a noncitizen is returned to the 'status' they held upon their parole, that they revert to status as an 'arriving alien,' or that they must be detained."  *Qasemi*, 2025 WL 3654098, at *10.  Rather, it states that, following the expiration of parole, the noncitizen shall (1) "forthwith return or be returned to the custody from which he was paroled" and (2) "thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States."  8 U.S.C. § 1182(d)(5)(A).  Neither of these requirements justify treating petitioner, who was paroled, as if he is "arriving in the United States."

First, returning petitioner "to the custody from which he was paroled" does not mean that petitioner's status under § 1225 reverts back to what it was when he was

7

initially in custody.  In fact, § 1182(d)(5)(A) "recognizes that the parole physically happened, because it contemplates that the noncitizen must be returned to detention." *Coalition*, 805 F. Supp. 3d at 86.  Thus, § 1182(d)(5)(A) recognizes that noncitizens paroled under its authority are released into the United States.  It would be illogical that these noncitizens would revert back to being detained pursuant to § 1225(b)(1), which governs the inspection of noncitizens "arriving into the United States," instead of considering them detained under another applicable authority.  This is especially true given that § 1182(d)(5)(A) does not state that a noncitizen reverts back to the status he or she possessed before the grant of parole.  *See United States v. Handley*, 678 F.3d 1185, 1111 (10th Cir. 2012) (stating that courts should "ordinarily resist reading words or elements into a statute that do not appear on its face." (citation omitted)).

      The second requirement of § 1182(d)(5)(A)—that after returning to custody a noncitizen's case shall continue to be dealt with in the same manner as any other applicant for admission—also does not make § 1225(b)(1) applicable.  Section 1225(a)(1) defines an applicant for admission as a noncitizen "present in the United States who has not been admitted or who arrived in the United States (whether or not at a designated port of arrival . . . )." 8 U.S.C. § 1225(a)(1).  Thus, an "applicant for admission" need not be "arriving in the United States."  Rather, "[a]ll the term 'applicant for admission' requires is presence in the United States without admission." *Rodriguez-Acurio*, 2025 WL 3314420, at *17.  And, as § 1182(d)(5)(A) specifies, parole is not regarded as admission.  8 U.S.C. § 1182(d)(5)(A).  "Thus, Section 1182(d)(5)(A) suggests that rather than reverting to any prior status, a noncitizen whose parole has expired is treated like the vast majority of undocumented immigrants currently living in

this country who are not subjected to expedited removal." *Rodriguez-Acurio*, 2025 WL 3314420, at *17.

Accordingly, the Court finds that § 1182(d)(5)(A) does not require petitioner to be detained under the same statutory status as his original detention. Many courts analyzing this question have reached the same conclusion. *See Qasemi*, 2025 WL 3654098, at *11 (collecting cases).[7] However, some courts have come to a different conclusion. Respondents cite *Singh v. Andrews*, 2026 WL 292649, at *3 (E.D. Cal. Feb. 4, 2026), for the proposition that a petitioner who is released pursuant to § 1225(b)(1) and paroled under § 1182(d)(5)(A) remains subject to § 1225(b)(1) after parole expires.[8] However, *Singh* did not analyze the language of § 1225(b)(1) and did not explain how § 1225(b)(1) would permissibly govern the detention of a noncitizen who was released on parole and is not "arriving in the United States." *See generally Singh*, 2026 WL 292649. Thus, the Court finds that *Singh* is distinguishable.

---

[7] Notably, in *Qasemi*, 2025 WL 3654098, at *10, the court determined § 1182(d)(5)(A)'s mandate that, upon expiration of parole, a noncitizen be returned to the custody from which he was paroled does not require that the noncitizen be returned to physical custody. *Id.* Instead, the court noted that, when paroled, a noncitizen gains certain freedoms, such as freedom from discretionary detention. *Id.* However, when parole has expired, the noncitizen loses those freedoms. *Id.* at *11. The court held that it is this form of custody, rather than physical custody, that a noncitizen must be returned to following the termination of parole. *Id.* Regardless of whether § 1182(d)(5)(A) contemplates a return to physical custody, its language does not require that the noncitizen be detained under the same statutory authority as before the noncitizen was paroled.

[8] The court in *Singh*, 2026 WL 292649 at *4-5, ultimately determined that the petitioner's detention under § 1225(b)(1) violated his due process rights and granted his habeas petition. *Id.* The court noted that DHS's failure to rearrest the petitioner or expressly extend his term of parole when his parole expired made it possible that any subsequent arrest "would be governed by DHS's general interior arrest and detention authority under 8 U.S.C. § 1226(a)." *Id.* at *4 n.6. However, the court determined that it was unnecessary to address this argument because petitioner was entitled to relief even if his detention was governed by § 1225(b)(1). *Id.*

The Court finds that petitioner's detention is governed by § 1226(a).  As the Supreme Court explained in *Jennings v. Rodriguez*, 583 U.S. 281, 289 (2018), "U.S. immigration law authorizes the Government to detain certain aliens seeking admission into the country under §§ 1225(b)(1) and (b)(2).  It also authorizes the Government to detain certain aliens already in the country pending the outcome of removal proceedings under §[ ] 1226(a)."  *Id.*  Here, petitioner was in the country for almost two years when he was re-detained.  Docket No. 9-1 at 2-3, ¶¶ 5, 10.  Thus, he is detained pursuant to § 1226(a).  Moreover, ICE arrested petitioner through a warrant, which is the procedure for arresting a petitioner pursuant to § 1226(a).[9]  *See* 8 U.S.C. § 1226(a); Docket No. 9-1 at 3, ¶ 11.  Noncitizens detained under § 1226(a) are entitled to receive bond hearings.  *Jennings*, 583 U.S. at 847.  Because there is no evidence that petitioner has been provided a bond hearing, his current detention violates § 1226(a).[10]

Petitioner requests that he be immediately released.  Docket No. 8 at 14, ¶ 57.  However, petitioner provides no argument for why that is appropriate relief when § 1226(a) authorizes detention.  *See generally* Docket No. 8.  The Court finds that a bond hearing is a more appropriate remedy.

### III. CONCLUSION

Therefore, it is

---

[9] Petitioner does not dispute this fact.  *See generally* Docket No. 11.  Thus, petitioner's claim that respondents violated 8 U.S.C. § 1226(a) by arresting him without a warrant (Count 2) is meritless.  *See* Docket No. 8 at 14, ¶¶ 58-60.

[10] The Court will grant the habeas petition on this ground.  Therefore, it need not reach petitioner's due process claim (Count 3).  *See Hernandez*, 2025 WL 2996643, at *8 ("the Court declines to adjudicate Petitioner's due process claim on the merits at this time because the Court grants the relief Petitioner seeks based on the applicability of § 1226(a)").

**ORDERED** that the Amended Petition for Writ of Habeas Corpus [Docket No. 8] is **GRANTED**. It is further

**ORDERED** that respondents shall provide petitioner with a bond hearing under 8 U.S.C. § 1226(a) within **seven days** of the date of this Court's order. It is further

**ORDERED** that, within **five days** of petitioner's bond hearing, the parties shall file a status report indicating whether the bond hearing was held and whether bond was granted or denied.

DATED March 4, 2026.

BY THE COURT:

PHILIP A. BRIMMER
United States District Judge